PETROPLUS, JUDGE:
Columbia Ribbon & Carbon Manufacturing Co., Inc., Claimant, seeks to collect the sum of $3,186.80 from the Department of Finance and Administration, Respondent, a State Agency, for goods which were ordered by the Respondent, delivered and invoiced, but for which payment was never made. The claim arises from three separate invoices dated respectively October 28, 1969, in the amount of $946.80, October 28, 1969, in the amount of $540.00, and November 6, 1969, in the amount of $1,700.00. All of the invoices were for carbon paper and other supplies sold to the Respondent on orders taken by T. R. Spradling, a salaried employee of the Claimant for over sixteen years, who also acted as a manufacturer’s representative for his Company’s products which were sold throughout the State of West Virginia. His customers were classified generally in three categories. Products were sold by Mr. Spradling directly to the customer at a list or retail price. He sold to Government Agencies at a wholesale or less than retail price, and also sold to dealers as independent contractors, who in turn made sales directly to the consumer. Previously to the orders in question which were received personally by Mr. Spradling, the State had been buying the Claimant’s products from Elk Service Supply, Incorporated, an independent dealer, which was purchasing the products directly from the Claimant and re-selling them to the State, presumably at a profit. When the Elk Service Supply Company became delinquent in the payment of its accounts with *20 the Claimant, by letter dated September 30, 1969, the Claimant notified Mr. Spradling that no future orders were to be taken from Elk Service Supply until payment had been made for the past due accounts. Mr. Spradling notified the Department of Finance and Administration of the problem with Elk Service Supply and was advised by June S. Church, the department head of the Revolving Fund, to take the orders in question personally and ship the merchandise directly to and bill the Department of Finance and Administration, Division of Purchases, Revolving Fund, Room B-59, Main Capitol Budding, Charleston. Documentary evidence was submitted by the Claimant showing orders taken, shipment of goods, bills of lading, receipt of the goods by State, invoices and other documents verifying direct sale of merchandise to the State without an intermediary.
The State pleaded as a defense that payment of this indebtedness was made to the Elk Service Supply Company, Inc., a local agent of the Claimant, which solicited the orders, invoiced the same, and received payment through proper channels of procedure, and that Respondent had no liability to the Claimant.
At the hearing the State’s witnesses testified that they could find no invoices from Columbia Ribbon & Carbon Manufacturing Co., Inc., in their files, and no memoranda showing receipt of shipments from Columbia, and no documentary evidence that the orders had been given to Mr. Spradling. On the contrary, documents were produced as Exhibits by the State showing the orders were taken by Elk Service Supply, Inc., were invoiced by Elk Service Supply, and stock room Receiving Reports designating Elk Service as the party from whom the goods were received, were presented to the Court, as well as can-celled checks showing payment of all invoices to Elk Service Supply at a post office address in Charleston. Payment was refused to the Claimant by the Commissioner of the Department of Finance and Administration as all records and information in the files of the State indicated the goods were received from another Company and that Company was paid. Furthermore, Elk Service Supply had been an agent or dealer for Columbia Ribbon & Carbon Manufacturing Co., Inc., on other purchases previously made.
It is on this record that the claims are submitted to this Court for decision. The flagrantly inconsistent documentary evidence gives rise to a suspicion that either the Claimant is attempting to perpetrate a fraud on the State by producing spurious documentary evidence to *21 this Court, or that the State’s files have been tampered with by removing the genuine copies of the documents and substituting fictitious documentary evidence that the sale had been made by and the goods were received from Elk Service Supply. The State’s witnesses were limited in their personal knowledge and observation of this transaction, and with no reflection on the witnesses, their unsatisfactory testimony can be explained by the rapid and unusual personnel changeovers in the department, vacations, unfamiliarity with purchasing procedures by special authorization, and lack of communication with the many persons involved in ordering, shipping, receiving and paying for the goods sold to the State. On the contrary we find the evidence of the Claimant to be direct and persuasive, properly documented and corroborated by personal knowledge of its salesman.
We, therefore, come to the conclusion that either the State’s purchasing procedures at that time were negligently handled, or irresponsibly documented by badly informed personnel, or that the State’s files have been ransacked and spurious invoices and supporting documents substituted for the genuine papers in such a manner as to divert payment to the so-called agent of the Claimant. Unexplained invoices from Elk Service Supply appear in the State’s files for the same items invoiced by the Claimant. This conclusion is supplemented by the refusal of Richard Pine, President of Elk Service Supply Company, who cashed the checks from the State, to respond to a subpoena of this Court and who on advice of counsel sought an immunity that this Court could not grant, thereby seeking refuge under his right to avoid self-incrimination under the Fifth Amendment. Mr. Church, the head of the Revolving Fund, at the time in question, a material witness, was unable to attend as a witness because of a personal involvement in Kentucky, and the Director of the Fund who did testify took office on February 1, 1970, long after the fact.
Elk Service Supply Company was an independent contractor and not an agent of the Claimant, and even if we assume an agency relation did exist at one time as the State contends, it had been terminated before these transactions took place. The State employees had been so informed and dealt with the Claimant directly on these purchases. Payment to a former agent after his authority had terminated certainly cannot be considered payment to the principal. The improper diversion of funds to Elk Service Supply which should have gone to the Claimant does not constitute payment of an obligation to the Claimant *22 through an agent having actual or apparent authority to receive payment. As a matter of equity and good conscience, the State has a moral obligation to the Claimant, and an award in the amount claimed is hereby made.
Claim allowed in the amount of $3,186.80.